UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
RAYMOND DONAHUE,

         Plaintiff,

     - against -

ASIA TV USA LTD., ZEE ENTERTAINMENT
ENTERPRISES, LTD., SUBHASH CHANDRA,
and SURESH BALA IYER,

         Defendants.
--------------------------------------X

**MEMORANDUM AND ORDER**

15 Civ. 6490 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiff Raymond Donahue filed this action against defendants Asia TV USA Ltd. ("Asia TV"), ZEE Entertainment Enterprises, Ltd. ("ZEEL"), Subhash Chandra ("Chandra"), and Suresh Bala Iyer ("Bala") alleging employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, _et seq._ ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290, _et seq._ ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 ("NYCHRL"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, _et seq._ (the "ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12101, _et seq._ (the "ADA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601, _et seq._ ("FMLA").  Presently before the Court are Asia TV's motion to dismiss the complaint in part and

1

motion to strike, ZEEL's motion to dismiss the complaint or, in the alternative, dismiss in part and strike, and Chandra's joinder to ZEEL's motion.  For the reasons stated below, Asia TV's motion is granted in part and denied in part and ZEEL's motion is granted in part and denied in part.

### BACKGROUND

Donahue is a 58-year-old male American citizen who suffers from clinical depression and insomnia.  He worked as Head of Program Sales for Veria Living (now known as Z Living), a health and wellness network owned by Asia TV, from September 10, 2010 until January 9, 2015.  In this role, Donahue "(a) [led] and develop[ed] sales and marketing strategies; (b) forecast[ed] and project[ed] revenue streams; and (c) coordinate[d] and direct[ed] a global staff of international sales representatives and commissioned agents in reaching sales goals."  Compl. ¶ 32.

Defendant Chandra, the Chairman of ZEEL's Board of Directors, played an active role in Asia TV.  He owned an apartment in New York and visited Asia TV's New York offices at least twice a month.  When visiting, "Chandra regularly met with all high-level employees at Asia TV[, including Donahue,] on a one-on-one basis."  Id. ¶ 23.  Chandra used a Veria email address, participated in employee reviews, prepared and reviewed with employees their responses to an executive feedback survey, including Donahue's,

2

was intimately involved in approving departmental budgets, and approved any expenses exceeding $1,000. In addition, Chandra's assistant told Donahue that Chandra wanted to confirm the hours employees spent in the office by checking their electronic swipecards.

According to Donahue, Chandra and Bala, the Chief Executive Officer of Asia TV, told him more than once that "Americans were lazy, took too much time off, came in [to] work late, left work early, and were litigious." Id. ¶ 35. In addition, Chandra allegedly told another Asia TV employee that she was "too Americanized" and "think[s] too much like an American," id. ¶ 67, and told other co-workers that Americans were "overweight and unhealthy," id. ¶64, that "the family ethos [does] not exist in America," that "Americans [do] not appropriately discipline their children," id. ¶ 71, and that Americans get divorced more frequently than Indians. Bala allegedly told a co-worker that "Americans think that a budget is a license to spend money" and that "Americans do not know how to negotiate." Id. ¶ 66. In addition, when an employee questioned the wisdom of holding a social gathering on a Friday, when employees may have already made plans at home, Bala allegedly threw an object across the room and shouted, "What is wrong with you people?! You Americans spend too much time with your wives and not enough time with your co-

workers." Id. ¶ 73. Indian managers allegedly told co-workers that Americans were "fat, lazy, dying, watched too much TV, and had too many divorces," id. ¶ 64, and one Indian manager asked a co-worker, "[w]hy do all you Caucasians think alike?" id. ¶ 79. Finally, American co-workers allegedly perceived the environment as hostile, and stated that Chandra was "distrustful of American employees, and was particularly harsh with American senior executives," "who were constantly undermined by [Chandra] and other Asian executives," id. ¶ 74; that he "viewed Americans as divorced, angry, and unhappy, which formed the basis of his belief that Americans needed a 'companion' network to fill a void of loneliness," id. ¶ 75, and "built the Veria Living network because he believed that Americans were fat, lazy, and needed help" and "harbored a derogatory sentiment toward Americans," id. ¶ 77; and that "an atmosphere of favoritism toward Indian employees at Veria Living" existed alongside "an 'us vs. them' mentality among the Indian and American employees," id. ¶ 76.

On June 25, 2014, Donahue spoke by telephone to Chandra, who told him that Asia TV "needed someone younger" and "that Donahue should start looking for a replacement because he was 'tired,'" Compl. ¶ 45, and suggested as a replacement Vivek Prabhu, a younger, Indian employee. Chandra also told Donahue that he would have a new boss, Sunita Uchil, who was not familiar with sales,

Donahue's particular expertise.

On July 17, 2014, while Chandra was visiting Asia TV's office in New York, Donahue was placed on 30 days' notice.  Donahue began to experience stress and anxiety, causing him to suffer from chest pains and high blood pressure.  As a result, he took medical leave beginning on July 21, 2014.  While Donahue was on leave, Asia TV changed its marketing materials and replaced Donahue's contact information with Prabhu's.

Donahue filed a Charge of Discrimination with the EEOC on August 14, 2014, in which he alleged that he suffered from discrimination and a hostile work environment based on his American national origin and age.  On January 9, 2015, Asia TV fired Donahue, who was still on medical leave, and stated that it did so "due to continued losses warranting a restructuring."  Compl. ¶ 55.  However, Donahue argues that Asia TV's proffered reasoning is pretextual, as demonstrated by the fact that Asia TV retained Prabhu.  The EEOC issued a determination letter on February 26, 2015, and found reasonable cause to believe that Asia TV had discriminated against Donahue.

## DISCUSSION

### I.   Asia TV

Asia TV now moves to dismiss Counts Seven, Eight, Nine, Ten, Fifteen, Eighteen, and Nineteen and to strike the paragraphs in

the complaint alleging that Chandra sexually harassed a co-worker, that the EEOC found reasonable cause to believe that Asia TV discriminated against Donahue, and that other co-workers experienced discrimination.  We address each argument in turn.

### A.   Motion to Dismiss

On a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Nonetheless, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Thus, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  If a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."  Id.

### 1.   FMLA

Asia TV seeks dismissal of Count 18, which alleges that Asia TV, ZEEL, and Chandra retaliated against Donahue for taking leave protected by the FMLA, on two grounds.  First, Asia TV contends that Donahue has failed to properly allege eligibility for FMLA

leave.   Second, Asia TV argues that Donahue has failed to plead that the defendants possessed retaliatory animus.

An employee is eligible for FMLA leave if he or she has worked "at least 1,250 hours of service . . . during the previous 12-month period."  29 U.S.C. § 2611(2)(A)(ii).  Here, Donahue argues that it is reasonable to infer from his full-time employment that he worked at least 1,250 hours.  However, "[a] simple allegation that the employee was 'employed full-time' by the employer is not enough to satisfy the 1,250 hours prong of the test."  Simmons v. New York City Transit Auth., No. CIV.A.CV96-3414(DGT), 2001 WL 984905, at *2 (E.D.N.Y. July 6, 2001).  Therefore, Donahue has not sufficiently pled that he was eligible for FMLA leave.  If Donahue had otherwise properly pleaded a FMLA retaliation claim, we would have granted leave to amend his complaint.  However, for the reasons described below, Donahue has failed to allege that he experienced FMLA retaliation.

Asia TV contends that even if Donahue was eligible for FMLA leave, he has not pleaded sufficient facts to make his claim plausible, because no facts support an inference of retaliatory animus.  In order to state a claim for retaliation pursuant to the FMLA, a plaintiff must allege that "1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse

employment action occurred under circumstances giving rise to an inference of retaliatory intent." Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004); see also Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015) (in Title VII case, at motion to dismiss stage, plaintiff's pleading must "give plausible support to a minimal inference of discriminatory motivation").

Donahue argues that he has pleaded facts that give rise to an inference of retaliatory intent, because the complaint alleges that "[a]fter Donahue went on medical leave, Asia TV removed his name from marketing materials and replaced it with Prabhu's," Compl. ¶ 50, and that after terminating Donahue, "Asia TV continued to employ Prabhu, who took over Donahue's responsibilities when he went on medical leave," id. ¶ 56. According to Donahue, these facts show that Asia TV decided to fire him when he took FMLA leave, though only actually terminated him almost three months after the expiration of the twelve weeks provided for by the FMLA. An FMLA retaliation claim cannot be premised on such allegations. It is simply unremarkable that Asia TV assigned another employee to perform Donahue's executive duties and provided contact information for third parties. Nor should it be forgotten that Donahue was placed on 30 days' notice before he took FMLA leave and that his FMLA leave had well expired by the time he was

terminated.  Therefore, Count Eighteen is dismissed.[1]

## 2.  Disability Discrimination

Asia TV seeks dismissal of Count 15, which alleges that Donahue was discriminated against on the basis of his disability pursuant to the ADA, on the ground that Donahue failed to exhaust his administrative remedies.  A plaintiff alleging a violation of the ADA must first file a charge of discrimination with the EEOC or the equivalent state agency.  See Williams v. New York City Hous. Auth., 458 F.3d 67, 69 (2d Cir. 2006) (per curiam).  If a party does not raise particular claims in his or her administrative complaint, he or she may still assert those claims "in federal court if they are 'reasonably related' to the claim filed with the agency."  Id. at 70.  "A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."  Fitzgerald v. Henderson, 251 F.3d 345,

---

[1] Count Eighteen is styled as "Interference, Discrimination, And Retaliation Under The FMLA Against Defendants Asia TV, ZEEL, and Chandra."  In its opening brief, Asia TV argued that, to the extent Donahue claims that Asia TV interfered with his FMLA benefits, such a claim should be dismissed.  In his opposition, Donahue states that he brings his claim only on a theory of FMLA retaliation.  See Pl.'s Mem. of Law in Opp. to Defs.' Mots. To Dismiss Pl.'s Compl. and Strike Certain Compl. Allegations, at 10 n.3.  Donahue's counsel confirmed at oral argument that Donahue is not claiming interference with his FMLA benefits.

359-60 (2d Cir. 2001) (internal quotation marks omitted).  "In determining whether claims are reasonably related, the focus should be on the factual allegations made in the . . . charge itself, describing the discriminatory conduct about which a plaintiff is grieving."  Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotation marks omitted).

In his charge of discrimination filed with the EEOC and the New York State Division of Human Rights, Donahue did not check the box indicating that he had suffered discrimination because of his disability, Decl. of Blaine H. Bortnick in Opp. to Defs.' Mots. To Dismiss and Strike ("Bortnick Decl."), Ex. B at 1, though he did allege that "Asia TV . . . retaliated against [him] for taking medical leave, removing [him] from its website and replacing [him] with the younger employee Vivek Prahbu," id. ¶ 29.  This allegation does not suffice to excuse Donahue from the exhaustion requirement of the ADA.  Though the factual basis for Donahue's ADA claim in his complaint in this case is, at best, vague, he appears to allege that Asia TV terminated him because of his depression and insomnia. See Compl. ¶¶ 10 (alleging that Donahue "is disabled as a result of severe clinical depression and insomnia"), 191 ("Defendants terminated Donahue's employment in part on the basis of his disability in violation of the ADA, 42 U.S.C. § 12102(a)."), 45 ("Chandra told Donahue . . . that the company 'needed someone

10

younger' and that Donahue should start looking for a replacement because he was 'tired.'"). An allegation in the administrative charge contending that defendants retaliated against him for taking medical leave for <u>stress</u> and <u>anxiety</u> does not provide notice to the EEOC that any investigation should encompass possible discrimination on the basis of disability because of <u>depression</u> and <u>insomnia</u>. Donahue's current claim is factually unsupported and legally distinct from the sole allegation in his charge arguably related to a disability, and therefore the two are not reasonably related.

### 3.   Hostile Work Environment

Asia TV seeks dismissal of Counts Seven through Ten, which allege a hostile work environment based on national origin and age under Title VII, the ADEA, NYSHRL, and NYCHRL. Counts Seven, Eight, and Ten are dismissed.

#### a)   Legal Standard

Under Title VII, the ADEA, and NYSHRL, "[a] hostile work environment claim requires a showing [1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." <u>Alfano v. Costello</u>, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks omitted); <u>Summa v. Hofstra</u>

<u>Univ.</u>, 708 F.3d 115, 124 (2d Cir. 2013); <u>Kassner v. 2nd Ave.</u>
<u>Delicatessen Inc.</u>, 496 F.3d 229, 240 (2d Cir. 2007). "[T]o avoid
dismissal under FRCP 12(b)(6), a plaintiff need only plead facts
sufficient to support the conclusion that she was faced with
harassment . . . of such quality or quantity that a reasonable
employee would find the conditions of her employment altered for
the worse . . . ." <u>Patane v. Clark</u>, 508 F.3d 106, 113 (2d Cir.
2007) (internal quotation marks omitted). "[W]hether . . . slurs
constitute a hostile work environment typically depends upon the
quantity, frequency, and severity of those slurs, considered
cumulatively in order to obtain a realistic view of the work
environment." <u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 110-11 (2d
Cir. 1997) (internal quotation marks and citations omitted).

"NYCHRL claims must be analyzed separately and independently
from federal and state discrimination claims," <u>Mihalik v. Credit</u>
<u>Agricole Cheuvreux N. Am., Inc.</u>, 715 F.3d 102, 113 (2d Cir. 2013),
and "must be given 'an independent liberal construction,'"
<u>Loeffler v. Staten Island Univ. Hosp.</u>, 582 F.3d 268, 278 (2d Cir.
2009) (quoting <u>Williams v. New York City Hous. Auth.</u>, 61 A.D.3d
62, 66, 872 N.Y.S.2d 27, 31 (1st Dep't 2009)). The question in
"terms-and-conditions cases [under the NYCHRL], is whether the
plaintiff has . . . been treated less well than other employees
because of" his or her protected characteristic. <u>Williams</u>, 61

A.D.3d at 78, 872 N.Y.S.2d at 39.

### b)   Application

Donahue alleges that he experienced a hostile work environment animated by national origin and age discrimination. According to the complaint, Chandra and Bala told him that "Americans were lazy, took too much time off, came in [to] work late, left work early, and were litigious," Compl. ¶ 35, and Chandra told him that Asia TV "needed someone younger," that Donahue should find a replacement for himself because he was "tired," and suggested Prahbu, a younger man of Indian origin, id. ¶¶ 45-46.  Even taking into account that "one type of hostility can exacerbate the [e]ffect of another," Terry v. Ashcroft, 336 F.3d 128, 150 (2d Cir. 2003), such allegations are plainly insufficient to allege a hostile work environment.  See Brown v. Coach Stores, Inc., 163 F.3d 706, 713 (2d Cir. 1998) (occasional racist remarks, including one directed at plaintiff, insufficient to state a hostile work environment claim).

Donahue also alleges numerous examples of other American co-workers' experiencing disparaging comments from Indian management regarding their national origin.  In particular, Chandra, Bala, and other managers of Indian national origin allegedly made frequent disparaging comments about Americans' health (that Americans are lazy and fat), family (that Americans lack family

ethos and get divorced too frequently), and business skills (that Americans are poor negotiators and cannot properly handle a budget). However, Donahue also alleges that he learned about all of these comments, at the very earliest, sometime after he went on medical leave, from which he never returned to work. <u>See</u> Compl. ¶¶ 49 (medical leave begins on July 21, 2014), 53 (Donahue files his Charge of Discrimination on August 14, 2014), 55 (Donahue is fired on January 9, 2015 while still on leave), 63 (alleging that "a number of Asia TV employees have come forward to corroborate instances of discrimination within the company").

While there is no question that "the crucial inquiry focuses on the nature of the workplace environment as a whole," and therefore "a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim," <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 570 (2d Cir. 2000), <u>superseded on other grounds by</u> N.Y.C. Local L. No. 85 (enacted 2005), and indeed, that allegations of harassment that the plaintiff is unaware of may support his claim, <u>see Perry v. Ethan Allen, Inc.</u>, 115 F.3d 143, 151 (2d Cir. 1997) ("the issue was not whether Perry had notice of the harassment of others but whether there was a pervasive hostile environment"). However, it is also the law that a plaintiff does not have a viable hostile work environment claim where that

14

plaintiff is not the target of harassment, is not present for any harassment, and has no knowledge of the harassment while it is ongoing.  Leibovitz v. New York City Transit Auth., 252 F.3d 179, 190 (2d Cir. 2001).

The instant case is closer to Leibovitz than to Cruz.  In Cruz, the Second Circuit held that Cruz had raised a triable issue at the summary judgment stage where plaintiff introduced evidence that her supervisor would "make 'loud racial comment[s]' — including use of the word 'nigger' — during [plaintiff's] daily trips to the mailroom," daily made "repeated remarks to the effect that women should be barefoot and pregnant," and, when he spoke with women, would do so in a sexually aggressive manner.  202 F.3d at 570-71 (first alteration in original).  In addition, Cruz introduced affidavit evidence from other employees regarding the supervisor's behavior.  Id. at 571.  Thus, in Cruz, the plaintiff experienced daily harassment on the basis of gender and race, couched in language far harsher than that used in the instant case. By contrast, in this case, plaintiff alleges that Chandra made two, less severe comments to him — that Americans are lazy and litigious, and that he should look for a replacement because he looked tired — and that some of his American colleagues also heard disparaging comments regarding Americans.  As noted earlier, the experience of other employees, of which Donahue was not even aware,

15

cannot transform his insufficient pleading into a sufficient one. Cf. Weiss v. Hustedt Chevrolet, No. CIV.A.05-4230, 2009 WL 2132444, at *8 (E.D.N.Y. July 13, 2009) ("While in close cases evidence of one type of harassment may arguably be used to sustain a claim of another type of harassment, such aggregation is inappropriate where, as here, the claim sought to be buttressed is patently inadequate. Which is to say, aggregation may be appropriate to nudge, but not catapult, a claim across the line between merely offensive conduct and conduct sufficient to establish a hostile work environment."). Therefore, Donahue's Title VII, ADEA, and NYSHRL hostile work environment claims are dismissed.

On the other hand, Donahue's claims under the NYCHRL survive because he has pleaded that Asia TV treated him "less well" than other employees based on his national origin and age. The federal "severe or pervasive" standard does not apply to NYCHRL claims. Mihalik, 715 F.3d at 109. "Hostile work environment claims are analyzed under the same provision of the NYCHRL as discrimination claims," Sotomayor v. City of New York, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012), and the standards for each are the same, Roberts v. United Parcel Serv., Inc., 115 F. Supp. 3d 344, 368 (E.D.N.Y. 2015). Further, "even a single comment may be actionable in the proper context," Mihalik, 715 F.3d at 113, such as one that "objectifies women being made in circumstances where that comment

16

would, for example, signal views about the role of women in the workplace." Williams, 61 A.D.3d at 80, 872 N.Y.S.2d at 41.  Here, Chandra told Donahue that Americans were lazy and in a separate conversation told Donahue that he should retire, suggested his replacement, and, in the same conversation, told Donahue to report to a new person, who allegedly did not possess the relevant expertise in his field to act as a supervisor.  Further, Asia TV subsequently replaced Donahue with the person Chandra suggested as his replacement.  Such facts render Donahue's claim that he was treated "less well," at least in part for discriminatory reasons, plausible.  Therefore, Count Nine survives.

### 4. NYLL

Count 19 of the complaint is dismissed.  Asia TV notes that Donahue agreed to withdraw his NYLL claim during the exchange of pre-motion letters that led to the filing of these motions, and at oral argument counsel for Donahue confirmed that Donahue is withdrawing this claim.

### B. Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "[T]he courts should not tamper with the pleadings unless there is a strong reason for so doing."  Lipsky v. Commonwealth United Corp.,

551 F.2d 887, 893 (2d Cir. 1976).  Asia TV argues that this Court should strike three categories of allegations from the complaint: (1) allegations regarding the sexual harassment of another employee; (2) allegations regarding the EEOC's determination; and (3) allegations regarding disparaging statements directed at other American employees.  We address each in turn.

### 1.   Sexual Harassment

Asia TV's motion to strike is granted with respect to the paragraphs in the complaint alleging that Chandra sexually harassed a co-worker of Donahue's.  Donahue's claims regarding the sexual harassment of a co-worker are not relevant to any cause of action he has brought.  While it is true, as Donahue argues, that different forms of harassment may exacerbate each other, Cruz, 202 F.3d at 572, the Second Circuit has so found where the plaintiff alleges that he or she has suffered the multiple varieties of discrimination, not where others in the same workplace have allegedly suffered discrimination wholly unrelated to plaintiff's claims, see id. at 564-65, 568-71; see also Feingold v. New York, 366 F.3d 138, 151-52 (2d Cir. 2004); Terry, 336 F.3d at 150.  It is also true that "[r]emarks targeting members of other minorities . . . may contribute to the overall hostility of the working environment for a minority employee," and therefore "offensive remarks or behavior [need not] be directed at individuals who are

members of the plaintiff's own protected class" to be relevant. Cruz, 202 F.3d at 570.  However, Cruz does not stand for the proposition that discrimination against any member of a protected class is relevant to another's hostile work environment claim, regardless of the basis of the discrimination alleged.  While racial discrimination against African-Americans may support a Hispanic woman's claim of a racially hostile work environment, id. at 570, that does not mean that sexual harassment is relevant to Donahue's claims of national origin and age discrimination.  See Smith v. AVSC Int'l, Inc., 148 F. Supp. 2d 302, 311 (S.D.N.Y. 2001) (discriminatory conduct directed at women and minorities unrelated to hostile work environment claim brought by older white man). Because evidence of sexual harassment of other employees is wholly unrelated to Donahue's claims of national origin and age-based hostile work environment claims, paragraphs 37-39 shall be stricken.  See id. at 317 (striking allegations regarding harassment of third parties).

## 2.   EEOC Determination

Asia TV's motion to strike is denied with respect to the EEOC determination.  We agree that evidence of the EEOC's determination should not be presented to the jury, if this case results in a jury trial, see Giannone v. Deutsche Bank Sec., Inc., No. 03 CIV. 9665(WHP), 2005 WL 3577134, at *3 (S.D.N.Y. Dec. 30, 2005)

(forbidding introduction of EEOC finding at trial because "[s]uch evidence would suggest to the jury the imprimatur of a court and an administrative agency to find Plaintiff's claims meritless"), but it is not immaterial to the issues at hand, and will therefore not be stricken.

### 3.    Pattern/Practice Claims

Finally, Asia TV's motion to strike is denied with respect to Donahue's allegations regarding disparaging statements relating to co-workers' American national origin.  As "one of the critical inquiries with respect to a hostile environment claim is the nature of the environment itself, evidence of the general work atmosphere is relevant," Perry, 115 F.3d at 150, and since Donahue's NYCHRL hostile work environment claim survives, these allegations are therefore potentially relevant to that hostile work environment claim.

## II.   ZEEL

### A.    Single Employer Liability

ZEEL seeks dismissal of the claims against it on the basis that ZEEL never employed Donahue.  In response, Donahue argues that ZEEL and Asia TV function as a joint employer or, alternatively, a single employer.

"Joint" employers are separate legal entities that "have merely chosen to handle certain aspects of their employer-employee

relationships jointly." <u>Clinton's Ditch Co-op Co. v. NLRB</u>, 778 F.2d 132, 137 (2d Cir. 1985). "Where this doctrine is operative, an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." <u>Arculeo v. On-Site Sales & Mktg., LLC</u>, 425 F.3d 193, 198 (2d Cir. 2005). In determining whether a joint employer relationship exists, "[r]elevant factors include commonality of hiring, firing, discipline, pay, insurance, records, and supervision." <u>NLRB v. Solid Waste Servs., Inc.</u>, 38 F.3d 93, 94 (2d Cir. 1994). Courts consider "the control that [the employers] exercise over the employee in setting the terms and conditions of the employee's work." <u>Sosa v. Medstaff, Inc.</u>, No. 12 Civ. 8926(NRB) (alteration in original), 2013 WL 6569913, at *3; <u>see also Clinton's Ditch</u>, 778 F.2d at 138.

By contrast, "[a] single employer situation exists where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a single employer." <u>Clinton's Ditch</u>, 778 F.2d at 137 (internal quotation marks omitted). "In such circumstances, of which examples may be parent and wholly-owned subsidiary

21

corporations, or separate corporations under common ownership and management, the nominally distinct entities can be deemed to constitute a single enterprise." <u>Arculeo</u>, 425 F.3d at 198.  "A parent and subsidiary cannot be found to represent a single, integrated enterprise in the absence of evidence of (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." <u>Cook v. Arrowsmith Shelburne, Inc.</u>, 69 F.3d 1235, 1240 (2d Cir. 1995) (alteration and internal quotation marks omitted).  Centralized control of labor relations is the most important factor. <u>Brown v. Daikin Am. Inc.</u>, 756 F.3d 219, 227 (2d Cir. 2014).

According to ZEEL, Donahue has failed to plead that Asia TV and ZEEL constitute a single employer or a joint employer.  ZEEL contends that "the best [Donahue] can do" is allege that Chandra, a board member of ZEEL, was "somehow involved with Asia TV."  ZEEL Reply Br. at 2.  Donahue, however, has pleaded far more than some unspecified involvement: Chandra, according the complaint, visited Asia TV's offices twice a month; met with employees, including Donahue, to review their performance evaluations; approved departmental budgets and expenses above $1,000; sought to determine when employees arrived in the morning and left at night through access to their electronic swipe cards; reviewed employee

22

responses to a survey with employees individually; established particular policies at Asia TV governing employee duties; and "met with several high-ranking Asia TV employees in ZEEL's offices in India . . . to discuss business strategy," Compl. ¶ 31. Additionally, Chandra allegedly recommended a replacement for Donahue after telling him he should retire, and that person ultimately did replace Donahue.

While we cannot predict the outcome on summary judgment following discovery, the allegations regarding Chandra sufficiently indicate "commonality of hiring, firing, . . . and supervision," Solid Waste, 38 F.3d at 94, and suggest that ZEEL, through Chandra, may have exercised significant control in setting the terms and conditions of Donahue's work, to render plausible Donahue's argument that ZEEL and Asia TV acted as joint employers.

These allegations also support a single employer theory, particularly because Donahue alleges that Asia TV is a subsidiary of ZEEL, Compl. ¶ 4, and the allegations regarding Chandra suggest "centralized control of labor relations," the "most important" factor for a single employer relationship. Brown, 756 F.3d at 227. Although ZEEL's counsel contended at oral argument that, because of ZEEL and Asia TV's relationship of licensor and licensee, this doctrine is inapplicable, we cannot consider such statements on a motion to dismiss. See Brass v. Am. Film Techs.,

Inc., 987 F.2d 142, 150 (2d Cir. 1993) ("When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."). To be sure, discovery may reveal that the parties are insufficiently intertwined to hold ZEEL liable, but Donahue has pleaded sufficient factual material to survive a motion to dismiss.[2]

### B.   Exhaustion

ZEEL argues that Donahue has not exhausted his administrative remedies with respect to it, because ZEEL was not named in Donahue's EEOC charge.  Exhaustion of administrative remedies is "a precondition to bringing [Title VII and ADEA] claims in federal

---

[2] ZEEL also argues that Donahue's claims against it fail because he does not sufficiently allege ZEEL's involvement.  Even though a joint employer relationship does not necessarily mean that both employers are liable for discriminatory conduct, Sosa, 2013 WL 6569913, at *3-4, Donahue claims that Chandra had extensive involvement in the alleged discriminatory conduct, and has alleged facts from which one can plausibly infer that ZEEL was involved via Chandra.  Moreover, Donahue has plausibly pled that ZEEL and Asia TV acted as a single employer, and "[w]here two entities are deemed part of a single integrated enterprise, then both entities are subject to joint liability for employment-related acts," Lima v. Addeco, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009) (internal quotation marks omitted), aff'd sub nom. Lima v. Adecco &/or Platform Learning, Inc., 375 F. App'x 54 (2d Cir. 2010).

court." <u>Legnani v. Alitalia Linee Aeree Italiane, S.P.A</u>, 274 F.3d 683, 686 (2d Cir. 2001).  However, Donahue clearly <u>did</u> name ZEEL in his EEOC charge.  <u>See</u> Bortnick Decl. Ex. B at 1.[3]  ZEEL argues in reply that Donahue has failed to properly plead that he received a right to sue letter, because his allegation that he "received a Notice of Right to Sue from the [EEOC], and is filing this Complaint within ninety days of receiving the Notice of Right to Sue," Compl. ¶ 9, does not allege the actual date on which he received the right to sue letter or that such a letter named ZEEL.

Neither of ZEEL's arguments is availing.  Donahue has pled that he received a right to sue letter and filed this action within 90 days, and we trust that Donahue's counsel has complied with Rule 11.  Under Title VII, upon receipt of a right to sue letter, "a civil action may be brought against the respondent named in the charge," 42 U.S.C. § 2000e-5(f)(1), and Donahue clearly named ZEEL in his charge.  The ADEA, in contrast, "does not require an aggrieved party to receive a right-to-sue letter from the EEOC before filing suit in federal court."  <u>Holowecki v. Fed. Exp. Corp.</u>, 440 F.3d 558, 563 (2d Cir. 2006) (declining to follow <u>Legnani</u>, 274 F.3d at 686).  However, if the EEOC issues a notice

---

[3] Though not attached to the complaint, we may consider the EEOC charge incorporated by reference.  <u>Muhammad v. New York City Transit Auth.</u>, 450 F. Supp. 2d 198, 204 (E.D.N.Y. 2006).

to an ADEA claimant that the Commission is dismissing or otherwise terminating the proceeding, then "the claimant must file her federal suit within 90 days after receipt of the letter." Id.; see also 29 U.S.C. § 626(e). Moreover, similar to Title VII, the ADEA authorizes suit "against the respondent named in the charge [filed with the EEOC]." 29 U.S.C. § 626(e) (emphasis added). Thus, this aspect of ZEEL's motion is denied.

## CONCLUSION

For the foregoing reasons, Asia TV's motion is granted in part and denied in part and ZEEL's motion is granted in part and denied in part. The following Counts are dismissed: Seven, Eight, Ten, Fifteen, Eighteen, and Nineteen. Paragraphs 37 through 39 of the complaint are to be stricken. Plaintiff should file an amended complaint consistent with this Memorandum and Order within two weeks. This Memorandum and Order terminates docket nos. 28, 29, and 35.

**SO ORDERED.**


Dated:   New York, New York
         September 21, 2016


                              _____
                              NAOMI REICE BUCHWALD
                              UNITED STATES DISTRICT JUDGE


26

to an ADEA claimant that the Commission is dismissing or otherwise terminating the proceeding, then "the claimant must file her federal suit within 90 days after receipt of the letter." Id.; see also 29 U.S.C. § 626(e). Moreover, similar to Title VII, the ADEA authorizes suit "against the respondent named in the charge [filed with the EEOC]." 29 U.S.C. § 626(e) (emphasis added). Thus, this aspect of ZEEL's motion is denied.

## CONCLUSION

For the foregoing reasons, Asia TV's motion is granted in part and denied in part and ZEEL's motion is granted in part and denied in part. The following Counts are dismissed: Seven, Eight, Ten, Fifteen, Eighteen, and Nineteen. Paragraphs 37 through 39 of the complaint are to be stricken. Plaintiff should file an amended complaint consistent with this Memorandum and Order within two weeks. This Memorandum and Order terminates docket nos. 28, 29, and 35.

**SO ORDERED.**

Dated:   New York, New York
         September 21, 2016

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

26